UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
                                                                    :
MARK HOWARD,                                                        :
                                                                    :
                              Plaintiff,                            :
                                                                    :
               -v-                                                  :          12-cv-5344 (KBF)
                                                                    :
UNITED PARCEL SERVICE, INC.,                                        :          OPINION & ORDER
                                                                    :
                              Defendant.                            :
                                                                    :
------------------------------------------------------------------- X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: March 24, 2015

KATHERINE B. FORREST, District Judge:

Mark Howard commenced this action against his employer, United Parcel Service, Inc. ("UPS") on July 11, 2012. (ECF No. 1.) Howard has been deaf since birth. He has been employed by UPS in various capacities since May 1999. He alleges that during the course of his employment, and because of his inability to hear, he was subjected to discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112-17, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq. In particular, he alleges that in 2010 he was denied reasonable accommodations in connection with a certification course required for becoming a UPS driver. Following full discovery, UPS now moves for summary judgment as to all claims.

For the reasons set forth below, the Court GRANTS defendant UPS's motion in its entirety.

I.    FACTUAL BACKGROUND[1]

Plaintiff Howard is hearing impaired.  (DRSOF ¶ 1.)  He was first hired by UPS in 1999.  (DRSOF ¶ 2.)  At the time that he was hired, UPS knew that he was hearing impaired.  (PRSOF ¶ 2.)  At UPS he is part of a unionized workforce and represented by the International Brotherhood of Teamsters, Local Union 177 (the "Union".)  (DRSOF ¶ 3.)  The terms and conditions of employment for Union employees at UPS are set forth in a collective bargaining agreement ("CBA").  (DRSOF ¶3.)

Plaintiff held several part-time positions after his hiring by UPS, and he became a part-time car washer in or about 2000.  (DRSOF ¶ 4.)  He became a full-time employee in Parsippany, New Jersey in 2006.  (DRSOF ¶ 5.)  Plaintiff later decided that he did not want the job in Parsippany due to the longer commute and returned to his part-time car washer position.  (DRSOF ¶ 6.)

In the fall of 2009, plaintiff sought a position as a full-time driver.  (DRSOF ¶ 19.)  To qualify as a driver of a UPS vehicle in excess of 10,000 pounds, employees must obtain a "DOT card."  (DRSOF ¶ 11.)  A DOT card is issued pursuant to

---

[1] The following facts are taken from the Local Rule 56.1 statements submitted by the parties in connection with this motion for summary judgment and their supporting materials.  (ECF No. 44, 52 ("DRSOF"), 53 ("PRSOF").)  The Court cites to the parties' factual submissions only when they support a factual proposition, cite relevant material, and are not contradicted in pertinent part by a counter-statement supported by citation to evidence that would be admissible.  See Local Civil Rule 56.1(d); Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 223 (S.D.N.Y. 2003) (material facts set forth in a Rule 56.1 statement "are uncontested and may be accepted as true" where a Rule 56.1 counter-statement was "deficient" because it consisted solely of "blanket denials" and was "not supported by citation to any evidence"), aff'd, 99 Fed. App'x 259 (2d Cir. 2004).  The Court recites only those facts relevant to the claims and defenses currently at issue, but also includes some factual allegations that are not material to the claims asserted but that are important to understanding the context for this case.  To the extent that a party's response fails to directly address straightforward a factual allegation, this failure is considered an admission as a matter of law.  See Local Civil Rule 56.1(c); Gubitosi v. Kapica, 154 F.3d 30, 31 n.1 (2d Cir. 1998); NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd., 262 F.Supp.2d 134, 139 (S.D.N.Y. 2003).

federal regulation and certifies that an individual is physically qualified to operate commercial motor vehicles.  See 49 C.F.R. § 391.41(a)(1)(i); (DRSOF ¶ 25).  At the time that plaintiff first sought to become a driver with UPS (and at the time that he later did become a driver with UPS), such certification included confirmation that an individual could hear at certain levels.  (See DRSOF ¶ 25.[2])

To become a driver with UPS, an employee must obtain a DOT card, a position must be available, the employee must have the seniority under the CBA to apply for the position, and the employee must seek approval for a transfer from UPS management.  (DRSOF ¶¶ 11-12.)  If an employee obtains management approval, he or she is placed in a six-day mandatory Driver Training Class ("DTC") run by UPS.  (DRSOF ¶¶ 13-14.)  An employee must pass the DTC final examination—which includes both written and practical components—in order to qualify for a UPS driver position.  (See DRSOF ¶¶ 14, 68.)  Class participants must attend all six days of classes. (DRSOF ¶ 57.)

UPS has written essential job functions for the package car driver position. (DRSOF ¶ 17.)  Two of the essential job functions are:

- Have sufficient ability to communicate, through sight, hearing, and/or otherwise, to perform assigned tasks and maintain proper job safety conditions; and

- demonstrate cognitive ability to:

---

[2] Plaintiff objects to this factual allegation on the basis that, notwithstanding the language of 21 C.F.R. § 391.41, the Department of Transportation ("DOT") has been issuing waivers of the minimum hearing standard since February 1, 2013.  (DRSOF ¶ 25.)  But what is relevant to plaintiff's case is whether the minimum hearing standard was enforced in 2009—and plaintiff does not contest that it was indeed enforced at that time.

- o follow directions and work routines;

- o work independently with appropriate judgment;

- o exhibit spatial awareness;

- o read words and numbers;

- o concentrate, memorize, and recall;

- o identify logical connections and determine sequence of response;

- o process up to 5 steps ahead.

(DRSOF ¶ 18.)  UPS generally requires its full-time drivers to be able to communicate effectively with customers, the public, and law enforcement.  (DRSOF ¶ 40.)

Plaintiff sought and, after an initial failure as a result of the hearing test, obtained a DOT card in 2009.  (DRSOF ¶¶ 20-21, 28.)  In 2010, a driver position became available.  (DRSOF ¶ 29.)  UPS management approved plaintiff's application for the job and enrolled him in a UPS DTC course scheduled for April 2010.  (DRSOF ¶ 32.)  Prior to starting the course, plaintiff requested that UPS provide him with the services of an American Sign Language ("ASL") interpreter during the classroom portion of the training.  (DRSOF ¶ 33.)  UPS has an accommodation process that, in general, involves communications between the employee, the Union (if a Union employee is involved) and management.  (DRSOF ¶ 34.)[3]  UPS management discussed plaintiff's accommodation request with both the plaintiff and his Union.  (DRSOF¶ 35.)  UPS also reviewed and discussed the

---

[3] Plaintiff disputes this factual statement but does not offer any contrary facts.  Unsupported disputes of fact are insufficient to raise a triable factual issue.  See Local Civil Rule 56.1(c); Gubitosi, 154 F.3d at 31 n.1; NAS Elecs., 262 F. Supp. 2d at 139.

request internally.  (DRSOF ¶ 36.)  UPS considered a "hearing impaired protocol" that had been previously developed as part of a settlement.  (DRSOF ¶ 37.)  UPS notified plaintiff that they would not provide him with an ASL interpreter prior to the beginning of the DTC on April 5, 2010.  (DRSOF ¶ 41.)  Although UPS did not provide an ASL interpreter, it did offer plaintiff other accommodations including:

- a seat in the front of the class 3-5 feet away from the instructor;

- asking the instructor to face the class whenever possible while speaking;

- having questions by class members repeated; and

- allowing plaintiff additional time to take the written examination.

(DRSOF ¶¶ 42-43.)  Plaintiff was also advised that he should notify the class instructor of any issues with his ability to comprehend the material presented during the class.  (DRSOF ¶ 44.)  UPS asked another management employee who was being trained as a class instructor to sit next to plaintiff and assist him if plaintiff had any questions.  (DRSOF ¶ 45.)  Plaintiff was also allowed to copy the notes of other trainees if he missed or did not understand something.  (DRSOF ¶ 46.)  Plaintiff has a limited understanding of English, but he concedes that he did not inform UPS of this fact.  (DRSOF ¶ 47.)  There is no evidence that plaintiff requested accommodations other than an ASL interpreter.  (See DRSOF ¶ 48.)

On the first day of the April 2010 DTC class, plaintiff received and signed an acknowledgement of the "Class Requirements."  (DRSOF ¶ 49.)  That document states, among other things:

> 6. Space & Visibility seeing habits.  Know word for word assessment
> *          *          *
> 8. 10 Point Commentary Checklist.  Be able to state each of the 10 point Commentary items and explain how and why we do them.

(DRSOF ¶ 50.)  Plaintiff received class materials that explained the "10 Point Commentary Checklist" as well as the "Space and Visibility" habits.  (DRSOF ¶ 51.) Plaintiff took handwritten notes during class; his notes from the first day indicated that he took notes on the "10 Point Commentary Checklist."  (DRSOF ¶ 52.)

The April 2010 DTC course instructor was Michael Gawronski.  (DRSOF ¶ 53.)  Gawronski and plaintiff communicated via written notes during breaks in class.  (DRSOF ¶ 54.)  Plaintiff attended the first two days of class but missed the third.  (DRSOF ¶ 56.)  As attendance at all six classes is mandatory, plaintiff was required to return to his prior car washer position and await a new DTC course offering.  (DRSOF ¶¶ 57-58.)  UPS advised plaintiff that he would be enrolled in the May 2010 course.  (DRSOF ¶ 58.)  He was provided the same accommodations for his hearing impairment in May as he had received in April.  (DRSOF ¶ 63.)  He was allowed to exchange written notes if he had questions. (DRSOF ¶ 65.)

The written course requirements for the May 2010 course were the same as the April requirements.  (DRSOF ¶ 61.)  The May requirements included that participants had to know "word for word" the "Space and Visibility seeing habits" and be able to state each of the "10 Point Commentary Checklist" items and explain how and why UPS employees did them.  (DRSOF ¶¶ 61-62.)

From time to time during the May DTC, the instructor would write instructions on the board and plaintiff would take notes on those instructions. (DRSOF ¶ 67.)

At the conclusion of the DTC course, plaintiff passed all but two portions of the written and practical tests UPS administered.  (DRSOF ¶ 68.)  He did not pass the portion of the written test concerning the 10 Point Commentary checklist or the Space & Visibility seeing habits.  (DRSOF ¶ 68.)  Gawronski reviewed plaintiff's mistakes, advised him how to correct them, and provided him with an opportunity to retake the examination.  (DRSOF ¶ 69.)  Plaintiff then retook the examination and again failed the same two portions.  (DRSOF ¶ 70.)  After failing the DTC examination for the second time, plaintiff returned to his prior position.  (DRSOF ¶ 71.)

A year later, UPS promoted plaintiff to a full-time "helper" position in its Chester, New York facility.  (DRSOF ¶ 72.)  However, he was tardy and/or absent on six occasions during his probationary period for his new position and, as a result, failed the probationary period.  (DRSOF ¶ 73.)  Thereafter, he was returned to his prior position as a part-time car washer. (DRSOF ¶ 74.)

On February 17, 2011, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and the New York State Department of Human Rights ("NYSDHR").  (DRSOF ¶ 102.)  He filed this lawsuit on July 11, 2012. (DRSOF ¶ 101.)  His complaint to the NYSDHR states that he was "subject to unlawful discriminatory actions" because UPS's training program "included

training videos that were not closed captioned," and "[a]s an accommodation, [he] asked for more time to retake the commentary portion of the test and was denied." (Affirmation of Michael T. Bissinger, ECF No. 42 ("Bissinger Aff.") ex. Z.)  Thus, by denying him the requested accommodations and failing to provide an ASL interpreter, UPS "denied [him] the same opportunity to pass the driving course as employees who could hear and speak."  (Bissinger Aff. ex. Z.)  Plaintiff's complaint also states that during his employment with UPS he applied for "several driving and promotional supervisory positions" for which he was qualified, and he was "denied those position[s] because of [his] hearing and speech impairment." (Bissinger Aff. ex. Z.)

In September 2012, a driver position became available.  (DRSOF ¶ 75.)  UPS enrolled plaintiff in another DTC course in order to qualify him for the position. (DRSOF ¶ 76.)  Plaintiff again requested an ASL interpreter, and UPS again declined.  (DRSOF ¶¶ 76-77.)  UPS again provided plaintiff with alternative accommodations, which were similar to those it had previously provided him in connection with the two courses in the spring of 2010: seating at the front of the class, having the instructor face plaintiff when speaking to the class, meeting with plaintiff daily to ensure that he understood the class instruction, and offering plaintiff additional time to take the exam.  (DRSOF ¶ 77.)

Plaintiff passed the September 2012 DTC course without the aid of an ASL interpreter.  (DRSOF ¶ 80.)  Plaintiff concedes that the course materials and the exam had not changed, and that he had the benefit of his notes from the previous

classes, and that this time he was able to memorize the materials.  (POSOF ¶ 80.)
Plaintiff began working as a full-time package car driver for UPS in September
2012.  (DRSOF ¶ 81.)  Four months later, in January 2013, he hit an object backing
down a customer's driveway.  (DRSOF ¶ 82.)  He did not report the accident as
required by UPS rules.  (DRSOF ¶ 87.)  The next day, plaintiff was fired as a driver
for not reporting the accident.  (DRSOF ¶ 88.)  UPS, plaintiff, and the Union
subsequently agreed to reduce the termination to a thirty-day suspension, after
which plaintiff returned to his position as a part-time car washer, which he had
held prior to becoming a driver.  (DRSOF ¶ 89.)  Plaintiff continues to be employed
by UPS.  (DRSOF ¶ 107.)

II.     PROCEDURAL HISTORY

Plaintiff filed this action on July 11, 2012.  (ECF No. 1.)  He filed an amended
complaint (the "FAC") on December 10, 2012.  (ECF No. 14 ("FAC").)  The FAC
asserts a single cause of action for employment discrimination based on a disability
under both the ADA and the NYSHRL.  (ECF No. 14.)  In the FAC, plaintiff alleges
that "[d]uring the course of his employment with Defendant UPS, Plaintiff Howard
was subjected to acts of discrimination because of his inability to hear."  (FAC ¶ 8.)
The FAC further specifies that

> [s]uch acts included, but were not limited to, the following
> characteristic examples:  In May 2010, plaintiff made a
> written request [for] a sign-language interpreter for a
> driving education program.  His request was refused . . .
> and as a result he failed the program . . . which would
> have meant a substantial increase in salary and better
> working conditions.  No attempt was made to
> accommodate him during the course . . . ."

9

(FAC ¶ 9.)  The FAC continues, "There were other incidents in which Plaintiff was denied a sign language interpreter and other reasonable accommodation in connection with his deafness."  (FAC ¶ 9.)  Plaintiff alleges that throughout his employment he was subjected to hostile words and deeds as a result of his deafness, and that he complained but that his complaints did not receive "proper redress." (FAC ¶ 10.)

In sum, the FAC ties only a single specific incident tied to the complained-of adverse employment actions: the failure to provide the ASL interpreter in connection with the 2010 DTC courses.

UPS moved for summary judgment on June 10, 2014.  (ECF No. 40.)  The motion became fully briefed on August 22, 2014.  (ECF No. 50.)  This action was reassigned to the undersigned on March 6, 2015.

## III.   LEGAL STANDARDS

### A.   Summary Judgment

 Summary judgment may not be granted unless the movant shows, based on admissible evidence in the record placed before the court, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party does not bear the ultimate burden on a particular claim or issue, it need only make a showing that the non-moving party lacks evidence from which a reasonable jury could find in the non-moving party's favor at trial.  Id. at 322-23.  In making a determination on summary judgment, the

10

court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." <u>Dickerson v. Napolitano</u>, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue of material fact for trial. <u>Price v. Cushman & Wakefield, Inc.</u>, 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011); <u>see also</u> <u>Wright v. Goord</u>, 554 F.3d 255, 266 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." <u>Hicks v. Baines</u>, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted); <u>see also</u> <u>Price</u>, 808 F. Supp. 2d at 685 ("In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial.").

Only disputes relating to material facts—"facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>see also</u> <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

11

Summary judgment is as appropriate in actions alleging employment discrimination as it is in other types of cases.  Abdu–Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases."); McLee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir. 1997) ("[S]ummary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact . . . ." (citations omitted)).

B.    Time Bar.

"[A] claimant pursuing claims under the ADA must file charges with the EEOC within 300 days of the purportedly unlawful acts." Troeger v. Ellenville Cent. Sch. Dist., 523 Fed. App'x 848, 851 (2d Cir. 2013).  An NYSHRL claim must be brought within three years.  N.Y. C.P.L.R. 214(2); Kassner v. 2d Ave. Delicatessen, Inc., 496 F.3d 229, 238 (2d Cir. 2007).

C.    Disability Discrimination

1.    Burden-shifting analysis.

Plaintiff's discrimination claims under the ADA and the NYSHRL are evaluated under the three-step burden shifting analysis set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See, e.g., Benson v. Otis Elevator Co., 557 Fed. App'x 74, 76 (2d Cir. 2014) (McDonnell Douglas burden-shifting framework applies to disability claims under NYSHRL); Fall v. N.Y. State United Teachers, 289 Fed. App'x 419, 422 (2d Cir. 2008) (McDonnell Douglas burden-shifting framework applies to disability claims under ADA and NYSHRL).

Under <u>McDonnell Douglas</u>, plaintiff must first establish a prima facie case of discrimination by showing (1) that he was within a protected group; (2) that he was qualified for his position; (3) that he suffered an adverse employment action; and (4) that "such action occurred under circumstances giving rise to an inference of employment discrimination." <u>Gorzynski v. JetBlue Airways Corp.</u>, 596 F.3d 93, 107 (2d Cir. 2010).  Of these, only (4) is contested in this action.

If Plaintiff can demonstrate these elements, the burden then shifts to defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action.  <u>Leibowitz v. Cornell Univ.</u>, 584 F.3d 487, 499 (2d Cir. 2009) (internal quotation marks omitted).  Defendant's burden is "one of production, not persuasion." <u>Reeves v. Sanderson Plumbing Prods.</u>, 530 U.S. 133, 142 (2000).

Once defendant has carried their burden, plaintiff must then raise a triable issue of fact as to whether defendant's "legitimate, nondiscriminatory reason" for the adverse employment action was merely pretextual.  <u>Reeves</u>, 530 U.S. at 143. Otherwise, defendant is entitled to summary judgment.

2.    <u>Causal linkage.</u>

To establish a claim of disability discrimination under the ADA, the adverse employment action must be causally linked to the alleged act of discrimination on the basis of disability.  <u>See</u> <u>Parker v. Sony Pictures Entm't, Inc.</u>, 260 F.3d 100, 107 (2d Cir. 2001) (a "causal connection between a disability and an adverse employment action" is "requisite" for establishing liability for discrimination claim under the ADA); <u>Pearson v. Unification Theological Seminary</u>, 785 F. Supp. 2d 141,

163 (S.D.N.Y. 2011) ("causal showing for a prima facie case" of disability
discrimination is "requisite").

      D.    <u>Reasonable Accommodation</u>

To establish a prima facie case of discrimination based on failure to
accommodate, a plaintiff must establish that (1) he is a person with a disability; (2)
defendant had notice of his disability; (3) plaintiff could perform the essential
functions of the job at issue with reasonable accommodation; and (4) defendant
refused to make such accommodations. <u>Graves v. Finch Pruyn & Co.</u>, 457 F.3d 181,
184 (2d Cir. 2006). Plaintiff bears the burden of showing that "the costs of the
accommodation do not on their face obviously exceed the benefits." <u>McBride v. BIC
Consumer Prods. Mfg. Co.</u>, 583 F.3d 92, 97 n.3 (2d Cir. 2009).

"Summary judgment is . . . appropriate where a plaintiff fails to identify a
facially reasonable accommodation that the defendant refused to provide . . . or
when the employer offers an accommodation that is plainly reasonable." <u>Gronne v.
Apple Bank for Sav.</u>, 1 Fed App'x 64, 67 (2d Cir. 2001) (internal quotation mark and
citations omitted). "Reasonable accommodations" are "[m]odifications or
adjustments that enable an individual with a disability who is qualified to perform
the essential functions of that position; or  . . . to enjoy equal benefits and privileges
of employment as are enjoyed by [an employer's] other similarly situated employees
without disabilities." 29 C.F.R. 1630.2(o). An employer has the "ultimate discretion
to choose between effective accommodations . . . so long as the accommodation
provided is reasonable." <u>Gronne</u>, 1 Fed App'x at 67 (quoting <u>Fink v. N.Y.C. Dep't of
Personnel</u>, 53 F.3d 565, 567 (2d Cir. 1995)). "A reasonable accommodation can

never involve the elimination of an essential function of a job." <u>Shannon v. N.Y.C.</u> <u>Transit Auth.</u>, 332 F.3d 95, 100 (2d Cir. 2003).  "Whether or not something constitutes a reasonable accommodation is necessarily fact-specific" and "determinations on this issue must be made on a case-by-case basis." <u>Warnick v.</u> <u>Fed. Reserve Bank of N.Y.</u>, 91 F.3d 379, 385 (2d Cir. 1996).

IV.    DISCUSSION

A.    <u>Time Bar</u>

Plaintiff filed his charge with the EEOC on February 17, 2011.  Accordingly, to the extent that plaintiff's disability discrimination and reasonable accommodations claims are based on discriminatory acts prior to April 23, 2010 (that is, 300 days prior to February 17, 2011), they are time-barred.[4]

As explained above, with respect to his discrimination claim, plaintiff ties a single allegedly discriminatory incident to the complained-of adverse employment action: UPS's failure to provide an ASL interpreter in connection with the 2010 DTC courses.  It is undisputed that UPS decided not to provide plaintiff with an ASL interpreter no later than April 5, 2010.  (<u>See</u> DRSOF ¶ 41.)  Plaintiff's claim fir disability discrimination under the ADA is accordingly time-barred.

For the same reasons, plaintiff's reasonable accommodation claim is time-barred insofar as it is based on on UPS's decision not to provide him an ASL interpreter for the April 2010 DTC course.  Plaintiff's reasonable accommodation

---

[4] In paragraphs 8 and 9 of the FAC, plaintiff makes the vague generalized assertion that he was "denied privileges and benefits of employment and has been denied reasonable accommodation." However, the record is devoid of specific dates and circumstances of such instances.  To the extent these allegations concern discriminatory acts occurring prior to July 11, 2009, they are time-barred under the NYSHRL.

claim is not, however, time-barred with respect to UPS's decision not to provide him an ASL interpreter for the May 2010 DTC course.

B.   Disability Discrimination Claim

A separate and independent basis for granting summary judgment for UPS on all of plaintiff's claims is that plaintiff has failed to bear his burden and raise a triable issue under the McDonnell Douglas burden-shifting analysis.  The FAC's sole specific allegation of a denial of a discriminatory act relates to UPS's conceded denial of an ASL interpreter for the 2010 DTC courses.  That action is, therefore, the core of plaintiff's actionable claim.[5]

1.   Legitimate business reason.

The operative pleading in this matter is what one calls "bare bones."  The only factual detail concerns the 2010 DTC courses and UPS's decision not to provide plaintiff with an ASL interpreter.  According to plaintiff, this led to his failing the class and thereby not obtaining the benefits of the driver position earlier than he ultimately did.  The complaint's nebulous additional allegations do not mention any other adverse employment action, nor do they provide details on actions specifically

---

[5] UPS additionally argues that the generalized allegations contained in paragraphs 8 and 9 of the FAC were not covered by the EEOC complaint, and thus as to them, plaintiff has failed to exhaust his available administrative remedies, as required for bringing an ADA claim.  Hoffman v. Williamsville Sch. Dst., 443 F. Appx. 647, 649 (2d Cir. 2011).  Plaintiff argues that the Court should consider these allegations because they are of the same "nature" as the 2010 DTC course ASL interpreter issue.  (See ECF No. 46 at 16.)  In support of this argument, plaintiff cites Petrosino v. Bell Atlantic, 385 F.3d 210 (2d Cir. 2004).  In Petrosino, the Second Circuit stated that when a plaintiff's allegations of discrimination extend beyond the 300-day limitations period, "the nature of the claim determines what consideration will be given to the earlier conduct." Id. at 220.  Petrosino's language about the "nature of the claim," therefore, concerns whether a court may consider factual allegations outside of the limitations period—not whether a district court may later consider claims as to which a plaintiff has failed to exhaust his administrative remedies.  UPS is thus correct that plaintiff's failure to include these allegations in his EEOC complaint provides a separate basis for granting summary judgment for UPS on all claims other than the 2010 DTC course ASL interpreter claim.

tied to UPS's administration of the DTC test to plaintiff in 2010. Indeed, several of these allegations are merely generalized complaints regarding the workplace. As these additional allegations are not linked to any specific adverse employment action, they do not raise a triable issue. See Pearson, 785 F. Supp. 2d at 163.

Of the four requirements for establishing a prima facie case of discrimination under McDonnell Douglas, the parties only contest the requirement that plaintiff establish that UPS's allegedly discriminatory act "occurred under circumstances giving rise to an inference of employment discrimination." Gorzynski, 596 F.3d at 107. However, the Court need not resolve this dispute, because even assuming arguendo that plaintiff has carried his burden of establishing this requirement, there is no triable issue as to whether defendant has articulated a legitimate and nondiscriminatory reason for failing plaintiff in his 2010 DTC final examination that was not merely a pretext for unlawful discrimination.[6]

UPS has proffered a number of facts, supported by competent evidence, that meet its burden of production under the burden-shifting framework. There is no dispute that the adverse employment action—giving plaintiff a failing score on his 2010 DTC examinations—was based on his inability to pass all portions of the examination. There is also no dispute that the requirement that all drivers pass the DTC course was a standing UPS rule applicable to all applicants for the full-time driver position at issue. The core of plaintiff's claim is that the failure to provide an ASL interpreter was itself discriminatory. In response, UPS has proffered facts

---

[6] Defendant has argued that plaintiff cannot make out even a prima facie case, as he was unqualified for the job he claims he was denied. The Court need not and does not reach these arguments.

that its denial of an ASL interpreter was based on its requirement that its full-time drivers be able to communicate effectively with customers, the public, and law enforcement.  (DRSOF ¶ 40.)  As effective communication is demonstrably an important part of a full-time driver's job, UPS has articulated reasonable and clear business reasons for this requirement.  Further, UPS did provide plaintiff with several other accommodations that bely any discriminatory animus or pretext on its part, including offering him a seat in the front of the class, asking the instructor to face the class while speaking, repeating questions by class members, and allowing plaintiff additional time to take the written examination.

Having met its burden of production, plaintiff must come forward with facts that support a triable issue as to pretext.  Plaintiff has failed to do so.  Instead, plaintiff essentially argues that since only an ASL interpreter meets his definition of a "reasonable" accommodation, any UPS rationale for not providing an interpreter must be pretextual.  This is incorrect as a matter of logic and law.

       2.    <u>Causal linkage.</u>

Plaintiff here alleges that the absence of an ASL interpreter resulted in his failure of the 2010 DTC courses.  However, that argument can relate only to the May 2010 DTC course, as his failure of the April 2010 DTC course was due to his absence at the third of the six classes.  Thus, there is no triable issue as to whether plaintiff's failure of the April 2010 DTC course was due to unlawful disability discrimination because of the absence of facts supporting the requisite causal link.

Plaintiff supports his assertion that the lack of an ASL interpreter caused his failure of the May 2010 DTC course with the declaration of an "expert" who opines

that "UPS needed an interpreter to assure that the content of their training course was effectively transmitted to Mr. Howard." (Declaration of Andrew Rozynski, ECF No. 47 ex. H at 32.) This statement ignores important undisputed facts. It ignores that the only two portions of the DTC exam that plaintiff failed were written and practical portions, and that plaintiff received the course's written materials <u>twice</u> and that he took notes on them. (<u>See</u> PRSOF ¶¶ 68, 70, 80.) In addition, it ignores that following his initial failure of the written examination, the course instructor reviewed the material necessary to pass with him again, allowed plaintiff to re-sit the exam, and that he failed again for the same reasons. (DRSOF ¶¶ 69-70.) Plaintiff has never alleged that he cannot read or memorize English, and plaintiff himself alleges that the reason he was eventually able to pass the examination in 2012 was because he had finally memorized the material. (PRSOF ¶ 80.) That concession clearly implies that he was capable of memorization; that memorization was necessary for passing the examination; and that it was possible for him to perform the memorization adequately.

While plaintiff may have preferred to have had an ASL interpreter, there is no factual basis in the record sufficient to raise a triable issue as to a causal link between UPS's decision not to provide an ASL interpreter and his failure of the May 2010 DTC course. Plaintiff's argument amounts to an assertion that if only he had had an ASL interpreter, he would not have failed the course. The Court rejects that argument on the record before it.

C.     Reasonable Accommodation Claim

Plaintiff's claim that UPS discriminated against him by failing to reasonably accommodate him is based on the same factual allegations as his general discrimination claims.

The undisputed facts demonstrate that UPS provided plaintiff with reasonable accommodations as a matter of law.  The law does not require UPS to provide the accommodation plaintiff subjectively believes best serves his needs.  See Gronne, 1 Fed. App'x at 67.  The employer retains the ultimate discretion in determining the type of accommodation to provide, and so long as such an accommodation is reasonable, the Court will not disturb its exercise of that discretion.  Id.

The Court here finds that the accommodations that UPS provided were reasonable as a matter of law.  As detailed above, UPS made numerous modifications to the DTC classroom experience in order to facilitate plaintiff's comprehension of the material, and allowed plaintiff additional time to take the written examination, without providing him with an ASL interpreter.  These modifications were reasonable in light of the requirement of the full-time driver position, in which plaintiff would be expected to be able to communicate effectively with customers, the public, and law enforcement without the aid of an ASL interpreter.  In the specific factual context of this case, these accommodations were reasonable as a matter of law.[7]

---

[7] UPS also argues that the ability to communicate effectively was an essential job function and that the law does not require that it eliminate an essential job function as part of providing a reasonable

V.      CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is

GRANTED.

The Clerk of Court is directed to close the motion at ECF No. 40 and to

terminate this action.

SO ORDERED.

Dated:      New York, New York
            March 24, 2015


                                    _____
                                    KATHERINE B. FORREST
                                    United States District Judge

---

accommodation. (ECF No. 41 at 21-22.)  UPS argues that an ASL interpreter would be
communicating for plaintiff, and that this would eliminate UPS's ability to test his communicative
capabilities.  The Court agrees with UPS, but also finds that other reasons sufficiently support
granting summary judgment for UPS.